C

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 1 8 2015

TONY R. MOORE. CLERK
BY _____
                    DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

JUSTIN DALE TUREAU

VERSUS

2H, INC., ET AL.

DOCKET NO. 13-cv-02969

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION

Before the court is a motion for more definite statement and motion to dismiss filed by defendant, Chevron U.S.A., Inc. ("Chevron") as alleged successor to Gulf Oil Corporation ("Gulf") (Doc. Item 104).[1]  Chevron seeks dismissal of claims asserted by plaintiff, Justin Dale Tureau ("Tureau") in the original and the supplemental and amending complaint (Docs. 1-2 and 71).

Tureau initially filed this "legacy litigation"[2] lawsuit in the 12th Judicial District Court, Parish of Avoyelles with two other landowners, Kenneth James Guilbeau and Ritchie Grocer Company.  The

---

[1]  The motion was originally filed by Chevron and Four Star Oil and Gas Company.  However, pursuant to a stipulation filed by the parties, Four Star Oil and Gas Company has been dismissed with prejudice (Doc. 114).

[2]  As explained in Marin v. Exxon Mobil Corp., 48 So.3d 234, 238 n.1(La.2010), "'[l]egacy litigation' refers to hundreds of cases filed by landowners seeking damages from oil and gas exploration companies for alleged environmental damage . . . These types of action are known as "legacy litigation" because they often arise from operations conducted many decades ago, leaving an unwanted "legacy" in the form of actual or alleged contamination."  (Citations omitted).

three plaintiffs owned four separate but contiguous tracts of land in the Eola Oil Field which they alleged were contaminated as a result of oilfield operations conducted by 2 H, Incorporated, Goldsberry Operating Company, Inc., Hess Corporation, BEPCO, L.P. and BOPCO, L.P., or their predecessors in interest.  The three plaintiffs sought damages, remediation and injunctive relief.

The suit was removed to this court by BEPCO, L.P. and BOPCO, L.P. on the basis of diversity jurisdiction and plaintiffs' motion to remand was denied by the district judge (Doc. 52).  Thereafter, the cases were severed and each plaintiff was allowed to proceed under their own docket number (Doc. 52).

On January 5, 2015, Tureau filed a Supplemental and Amending Complaint (Doc. 71) naming Hess Corporation, Chevron U.S.A. Inc. and Four Star Oil and Gas Company as defendants.  Tureau alleged they or their successors in interest contaminated the two tracts of land he owned via oil and gas exploration and/or  production related activities.  Tureau entered a prayer for relief seeking: compensatory damages, punitive damages, costs, injunctive relief, remediation, unjust enrichment damages and all other equitable relief.  In response, Chevron filed the instant motion to dismiss and for more definite statement (Doc. 104).

The motion, having been referred by the district judge, is properly before me for report and recommendation.

## Law and Analysis

### Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that motions for more definite statements should be granted when the pleadings are so unclear that drafting a response is impossible. "A complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." Beanal v. Freeport-McMoran, Inc., 197 F.3d 616, 164 (5th Cir.1999) (Citations omitted).

In the instant case, the complaint adequately apprises Chevron of the nature of the claims against it. Tureau specifically describes the property that is the subject of the claims. He identifies the wells, their location on the property and their serial numbers. He advises of the nature of the damage and contamination and the legal theories upon which he relies. The discovery process is adequate to obtain the specifics of what, if any, contamination Chevron may have caused and for which it is responsible.

### Motion to Dismiss For Failure to State a Claim

To survive a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

U.S. 622, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  All well pleaded facts shall be deemed as true and all reasonable inferences must be drawn in the plaintiffs' favor.  <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 239 (5th Cir.2009).  Nonetheless, a motion to dismiss filed pursuant the Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and rarely granted." <u>Kaiser Aluminum & Chem. Sales v. Avondale Shipyards</u>, 677 F.2d 1045, 1050 (5th Cir.1982).

<u>Breach of Lease</u>

Chevron argues Tureau may not maintain his claims against it for breach of lease agreements.  Chevron correctly points out that the Louisiana Supreme Court held "that, in the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition *absent proof that the lessee has exercised his rights under the lease unreasonably or excessively*." <u>Terrebone Parish School Board v. Castex Energy, Inc.</u>, 893 So.2d 789, 801 (La. 2005).  As evidenced by the lease attached to Tureau's supplemental and amended complaint (Doc. 71-3), there is no express lease provision

regarding restoration of the land.[3]   Thus, a duty to restore Tureau's land to its original condition arises *only if* he shows that Chevron exercised its rights in an "unreasonable or excessive" manner.   Tureau fails to assert any allegations as to unreasonable or excessive use by Chevron.   Accordingly, to the extent Tureau seeks restoration of his land to its original, pre-lease condition, this claims should be dismissed.

However, to the extent Tureau seeks restoration of his land "to its original condition, less normal wear and tear", (Doc. 1-2, ¶22), the claim should not be dismissed.   Chevron concedes Louisiana Civil Code articles 2683 and 2692 provide for the return of property to such a state at the end of a lease.   A determination regarding what constitutes "normal wear and tear" is one left for a later date.

Continuing Tort

As Tureau concedes he cannot maintain claims for continuing tort, the claims should be dismissed.

Continuing Tresspass

A continuous trespass is a continuous tort.   As such, the operating cause of the injury must be continuous.   Where, as here, a plaintiff complains of contamination related to oilfield activities, it is not the continued presence of contamination that

---

[3] The court may consider the contents of Document 71-3 as it is a part of the pleadings.   Fed.R.Civ.P. 12(d).

is the operating cause of the injury but rather the activities that caused the contamination. See <u>Hogg v. Chevron U.S.A., Inc.</u>, 45 So.3d 991 (La. 2010). See also <u>Wagoner v. Chevron U.S.A., Inc.</u>, 55 So.3d 12, 25 (La.App. 2 Cir. 2010).

Here, Tureau fails to allege ongoing conduct on the part of Chevron as they have not engaged in activity on his land for more than 60 years. Instead, he argues in brief that there is a continuing trespass because Chevron exceeded the scope of its lease, relying on language in <u>Vermillion Parish School Board v. BHP Billiton Petroleum (Americas), Inc.</u>, docket no. 04-cv-02069 (W.D.La.2005). That language was in the context of a motion to remand and, in any event, did not consider the adequacy of a claim for trespass in the context of a motion to dismiss.

Tureau fails to allege or describe the specific lease, the applicable provision(s) therein, the scope exceeded by Chevron, or the activities it engaged in to exceed the scope of the lease. Accordingly, the claim for continuous trespass should be dismissed.

<u>Article 667 - Nuisance and Continuing Nuisance</u>

Prior to the 1996, Louisiana Civil Code article 667 provided:

Although a proprietor may do with his estate what he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

For Tureau to establish a claim he must allege the defendants were (1) proprietors/neighbors, (2) who conducted work on his property, (3) that caused damage to him.[4]

Chevron contends that Tureau cannot establish a claim under article 667 as lessors and lessees cannot be "neighbors". In support, they cite Westridge v. Poydras Properties, 598 So.2d 586 (La.App. 4 Cir., 1992) in which the state appellate court found that the "plaintiffs as lessees and sublessees of [the defendant] were not "neighbors" within the meaning of C.C. article 667." Id. at 589. However, the Louisiana Supreme Court has held that those with interests in the same piece of property are considered "neighbors" within the meaning of article 667. See Butler v. Baber, 529 So.2d 374, 381 (La.1988)[5], Magnolia Cole Terminal v. Phillips Oil Co., 576 So.2d 475 (La.1991)[6]. The courts in Inabnet

---

[4] Article 667 was amended in 1996 to add a negligence element. However, there is no need to discuss the post amendment version of the article or its application as the pleadings lack any allegations of activity undertaken by Chevron either during or after 1996.

[5]"From the foregoing jurisprudence, it is clear that article 667 applies to lessees. There is no reason that co-lessees of the same or adjacent property cannot be neighbors under the language of article 667."

[6] "Philips and its predecessors have exercised their contractual rights as mineral lessees with an unreasonable disregard for the damage being inflicted on this tract of land. Not only the soil but the groundwater, the Mississippi river and the public have been damaged. There was an ongoing negligent failure to plug this oil well. Phillips is obliged not only to pay the contractual damages owed to the landowner but also to

v. Exxon Corporation[7] and Alford v. Chevron, U.S.A.[8] reached the same conclusion.   In Inabnet the court found co-lessees to be "neighbors" and in Alford the court found the lessor and lessee to be "neighbors".   Accordingly, as Tureau and the defendants have interests in the same property, they are "neighbors" within the meaning of article 667.

The next question is whether Chevron performed work on Tureau's property.  Tureau alleges Chevron as successor in interest by merger to Gulf, performed oil and gas exploration and production activities on the property.  Specifically, he contends Chevron is "liable for damage resulting from the operation of the various wells, pits, tanks, flowlines, tank batteries, dehydration facilities, gas compression stations, wellheads, measuring facilities, commingling facilities, separators, salt water disposal wells, injection facilities, and other facilities in the Eola Oil & Gas Field ... which are identified on or in the attached exhibits, as well as the operation of other equipment and

---

abate the nuisance by properly plugging the oil well." Magnolia Coal Terminal, 576 So.2d at 484. (Internal citations omitted).

[7]  "We therefore clarify the Butler decision to hold that, in cases involving damages caused to one holder of a right to immovable property by another holder of a right to the same property, the court in determining "fault" under Article 2315 must consider not only Articles 667-669, but also all other applicable codal and statutory rules and legal principles and other pertinent considerations." Inabnet,  642 So.2d 1243, 1252 (La.1994).

[8]  13 F.Supp.3d 581 (E.D.La.2014).

facilities related thereto." (Doc. 58, p.4).  While the complaint lacks any further allegations regarding "work" conducted by Chevron, the exhibits attached to the complaints show Gulf operated wells beginning in 1940 and ending around 1950.  Accordingly, Tureau has sufficiently alleged that Chevron conducted work on his property.

Finally, Tureau properly sets forth the third element, damages, by alleging that Chevron stored, released and disposed of oilfield waste resulting in contamination to his property.  Thus, Tureau has set forth a claim pursuant to article 667 and Chevron's motion to dismiss it should be denied.

Though the elements of article 667 are satisfied as to Chevron, to ultimately prevail, Tureau must still establish that Chevron was at fault.  As explained in Inabnet, neither strict nor absolute liability apply.  Tureau must establish more than causation and damages as consideration must be given to "other applicable codal and statutory rules and legal principles and other pertinent considerations" such as "temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party's knowledge of the existence of the damaged party's rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others."  Inabnet, 642 So.2d at 1252.

Finally, to the extent Tureau asserts a claim for continuing nuisance, the claim should be dismissed. As with continuing torts and continuing trespass, a continuing nuisance must be ongoing. The facts alleged do not plausibly suggest there is an ongoing nuisance causing harm to Tureau's property. All conduct undertaken by Chevron ceased decades ago.

<u>Articles 2317 and 2322</u>

Tureau asserts a claim for premises liability under articles 2317 and 2322. To establish a claim under 2317, he must allege "(1) the thing causing his damage was in the custody of the defendant; (2) the thing had a 'defect' or a condition creating an unreasonable risk of harm; and, (3) the defective condition caused plaintiff's injuries." <u>Hebert v. Sw. La. Elec. Membership Corp.</u>, 667 So.2d 1148, 1157 (La.App. 3 Cir., 1995)(Citation omitted). To establish a claim under 2322, he must allege "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and, (5) causation." <u>Broussard v. State ex re. Office of State Bldgs.</u>, 113 So.3d 175, 182-183 (La.2013).

While Tureau alleges Chevron had *garde* of the facilities and equipment that caused the pollution, he fails to assert a single allegation of how the facilities or the equipment were defective or

in ruin. Accordingly, he fails to properly assert a claim for premises liability under either article 2317 or 2322. See <u>Alford</u>, 13 F.Supp.3d 608-609.

## Civil Fruits

Tureau concedes he may not maintain a cause of action for civil fruits; thus, this claim should be dismissed.

## Mineral Code Articles 11 and 22

Tureau concedes he cannot maintain a cause of action under Mineral Code Article 22; therefore, that claim should be dismissed. Accordingly, we need only examine his claim made pursuant to Mineral Code article 11.

Article 11 provides "[t]he owner of land burdened by a mineral right and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other." La.R.S. §31:11. "The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease." La.R.S. §31:16. Chevron was a mineral lessee; thus, it was afforded mineral rights. Accordingly, article 11 is applicable and the claim should not be dismissed.

## Louisiana Civil Code Art. 576, 577 and 645

Tureau seeks "damages for the violation of any personal servitude of use applicable to the property in accordance with the provisions of La.C.C. arts. 576, 577 and 645." (Doc. 1-2, p.11). No other allegations are contained in the complaints. Accordingly,

Tureau fails to allege that Chevron held a servitude of personal use on the property, that Chevron violated the terms of a contract granting the servitude or that it violated any of the suppletive rules applicable to servitudes under articles 576 and 577. Accordingly, the claims should be dismissed.

Fraud

Tureau contends Chevron's failure to warn him of the toxic and hazardous nature of the contaminant waste left on his property is tantamount to fraud. He argues that a failure to warn is the same as suppression of the truth.

FRCP 9(b) requires a party alleging fraud to state with particularity, the circumstances constituting fraud. Louisiana law defines fraud as misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage or to cause a loss or inconvenience to someone. La.Civ.Code art 1953. The same article provides that fraud may be the result of silence or inaction. Under Louisiana law, in order to find fraud from silence or inaction, there must exist a duty to speak or to disclose information. Thomas v. Pride Oil & Gas Props., Inc., 633 F.Supp.2d 238 (W.D.La. 2009).

The elements of an action for fraud are a (1) misrepresentation of a material fact; (2) intent to deceive (fraudulent intent); and, (3) justifiable reliance and resulting damages. Culotta v. Sodexo Remote Sites Partnership, 2012 WL

1069179 (E.D.La. 2012).  Mere silence or inaction, without fraudulent intent, does not constitute fraud.  Terrebone Concrete, LLC v. CEC Enterprises, LLC, 76 So.3d 502 (La.App. 1 Cir.,2011). Fraud cannot be predicated on mistake or negligence.  Id.

Here, there are no allegations of a duty to inform and no allegation that any silence by Chevron was with intent to deceive. Nor are there any allegations that Tureau reasonably relied on the Chevron's silence to his detriment.  Rather, this case is similar to Guthrie v. Resources, Inc., 2013 WL 2471670 (W.D.La. 2013) in which the court noted there were no allegations distinguishing each individual defendant and its individual responsibility for fraudulent activity, no information on how, when or where the defendants actively concealed the pollution, no revelation of the source of the defendants' duty to inform, and no explanation why the defendants' failure to inform them was misleading.  The court also noted that a 45 year time period (akin to the time period in this case) was overly broad when alleging fraud.

As Tureau has failed to adequately plead fraud, the claim should be dismissed.

<u>Punitive Damages</u>

Tureau acknowledges Chevron did not engaged in conduct between September 1, 1984 and April 16, 1996.  Thus, he cannot maintain a claim for punitive damages.

Ultrahazordous Activity

Tureau contends Chevron engaged in ultrahazardous activity by storing, releasing and disposing of radioactive oilfield waste on his property.  To recover under this theory, Tureau must show: "(1) it is related to an immovable; (2) the activity itself must cause the injury and the defendant must engage directly in the activity; and, (3) the activity must not require the substandard conduct of a third party to cause injury."  Perkins v. F.I.E. Corp., 762 F.2d 1250, 1266 (5th Cir.1985).  Tureau has sufficiently asserted a cause of action having claimed that Chevron, through the acts of its predecessor, disposed of radioactive oilfield waste which resulted in damage to his property in the form of contamination.

However, at this time, I do not find that Chevron has indeed engaged in ultrahazardous activity.  As explained in Updike v. Browning-Farris, "[t]he determination of whether an activity can cause injury despite great prudence and care seems to require a factual inquiry."  808 F.Supp. 538, 543 (W.D.La. 1992).  Though the court in Updike continued to find storing of hazardous waste in open pits was an ultrahazardous activity, I find the facts presented to the court in that case were more fully developed than those in the instant matter.  Once the record is more thoroughly developed, the parties may ask the court to revisit the issue of whether or not the risk of harm presented by disposing of radioactive could be eliminated through the exercise of due care.

<u>Claims for Land Loss, Subsidence and Backfilling of Canals</u>

Chevron contends Tureau failed to cite any law that requires it to perform this type of remediation or that Chevron conducted any activities during the term of the lease which would have prompted the claim.  While, Tureau acknowledges he is unable to maintain a claim for such remediation under Mineral Code article 22, he has sufficiently alleged a claim against Chevron for conducting ultrahazardous activities.  If the claim is proven, such an order of remediation could be issued by the court.  Accordingly, Chevron's motion to dismiss this claim should not be granted.

<u>Restatement (Second) of Torts, §324A</u>

In the original complaint, Tureau alleges defendants were liable to him under Restatement (Second) of Torts, §324A, as interpreted by Louisiana jurisprudence.  He further alleges that Chevron assumed Gulf's duties to protect Tureau and his property from contamination and harm.  Chevron seeks to have this claim dismissed for the same reasons it was dismissed against Hess.  Tureau has not asserted any argument in favor or maintaining or dismissing the claim.

After reviewing the complaints, I find that Tureau fails to allege that Chevron undertook to provide services for another or that it performed negligently or that Tureau relied on anything Chevron undertook to do.  <u>Canipe v. National Loss Control Serv.</u>

Corp., 736 F.2d 1055, 1061 (5ᵗʰ Cir.1984).  Accordingly, the claim should be dismissed.

Civil Code Article 2688

Tureau seeks damages pursuant to Louisiana Civil Code article 2688.  This article, which requires lessees to notify lessors of damage to the property and to pay for any damages caused by their failure to notify, was enacted in 2005.  It cannot be applied retroactively to alter the obligation of any contracts with Chevron or its predecessors.  See Block for Reliance Ins. Co., 433 So.2d 1040 (La.1983).  As such this claim should be dismissed.

Leave to Amend

Courts should freely give leave to amend when justice so requires.  Fed.R.Civ.P. art. 15(a)(2).  Accordingly, Tureau's request for leave to amend his complaint should be granted.

### Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion for more definite statement be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss be **GRANTED** in part and **DENIED** in part.  Tureau's claims for fraud, punitive damages, continuing tort, continuing tresspass, continuing nuisance, civil fruits, ultrahazardous activity, unjust enrichment and claims under Louisiana Civil Code articles 2317 and 2322, 2688, Mineral Code article 22 and Restatement (Second) of Torts §324(A)

should be **DISMISSED**.  In all other respects, the motion to dismiss should be **DENIED**.

   **IT IS FURTHER RECOMMENDED** that Tureau be afforded leave to amend his complaint within 20 days of the adoption of this Report and Recommendation.

## Objections

   Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. .  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  No other briefs  (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a  final ruling.

   **FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM TEH DATE OF ITS SERVICE SHALL BAR AN AGREIVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL, THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana this

18th day of June, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE