RECEIVED
AUG 23 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN DALE TUREAU | CIV. ACT. NO. 13-2969 |
| -vs- | JUDGE DRELL |
| 2 H INC., ET AL. | MAG. JUDGE PEREZ-MONTES |

### MEMORANDUM RULING

Now before the court is a motion for summary judgment filed by defendant Chevron U.S.A., Inc. ("Chevron") (Doc. 138) in the above-captioned case. The motion has been appropriately briefed and is now ripe for decision.[1] For the reasons explained below, the court finds that Chevron's motion should be **GRANTED**.

### I.   BACKGROUND

#### A. Relevant Facts

The above-captioned case is one of three (3) legacy lawsuits formerly belonging to a single civil action originally filed in Louisiana's 12th Judicial District Court for the Parish of Avoyelles. The case was removed to this court in October of 2013.[2] In September of 2014, each plaintiff's claims were severed and assigned separate civil action numbers.[3]

This particular suit concerns two parcels of land in Louisiana's Eola Oil and Gas Field. The first, approximately 40 acres, more or less, lying West and North of the Union Pacific Railroad, located in Section 6, Township 2 South, Range 3 East, in Avoyelles Parish, Louisiana

---

[1] Plaintiff's memorandum in opposition is found in the record at Doc. 140. Chevron's reply brief is found at Doc. 142.
[2] Doc. 1.
[3] Doc. 52. The additional related civil actions are: 14-2867, Guilbeau v. 2 H, Inc., et al. and 14-2868, Ritchie Grocer Co. v. 2 H, Inc., et al.

1

("Tureau Tract 1") and the second, approximately 40.87 acres, more or less, located in Irregular Section 1, Township 2 South, Range 2 East, in Avoyelles Parish, Louisiana ("Tureau Tract 2").[4]

Chevron is successor in interest to Gulf Refining Company ("Gulf") and Tide Water Associated Oil Company ("Tide Water").[5] Gulf acquired its interest in Tract 2 via three (3) oil, gas and mineral leases: a 1933 lease between M.S. Mouliere and J.B. Ferguson, Jr. ("Mouliere Lease I), a 1933 lease between M.F. Mouliere and J.B. Ferguson, Jr. ("Mouliere Lease II") and a 1939 lease between B.B. Blair and Gulf ("Gulf Lease").[6] By virtue of these leases, Gulf operated three (3) wells on Tract 2: the M.F. Mouliere #2 (Well SN 23803); the M.F. Mouliere #5 (Well SN 24480); and the M.F. Mouliere #7 (Well SN 25157).[7] Well Nos. 2 and 5 were operated from 1940 until 1952, at which time Gulf conveyed its interest in the applicable leases to M.L. Mayfield.[8] Well No. 7 was operated from 1940 until 1952, at which time it was plugged and abandoned.[9]

Tide Water acquired its interest in Tract 2 via a single 1935 lease from M.F. Mouliere to Winston Stokes ("Stokes Lease").[10] Tide Water did not conduct any operations on Tract 2 and conveyed its interest in the Stokes Lease, subject to a reservation of depths below the top of the Wilcox formation, to M.L. Mayfield.[11]

Neither Gulf, nor Tide Water owned any interest in, nor conducted operations on Tract 1.[12]

---

[4] Doc. 138-2 at p. 3, citing Doc. 71 at ¶ 2.
[5] Doc. 138-2 at p. 4.
[6] Docs. 138-6, -7, -8.
[7] Doc. 71-2.
[8] Doc. 138-14.
[9] Doc. 71-2.
[10] Doc. 138-9.
[11] Doc. 138-10.
[12] Doc. 138-2 at p. 6, citing Doc. 138-3.

2

Plaintiff acquired his interest in Tracts 1 and 2 by an Act of Cash Sale, dated June 25, 2007 from Gwen Rousell Evans.[13] The Cash Sale was amended on August 15, 2008, reserving to Gwen Rousell Evans ½ of the oil, gas and minerals in Tracts 1 and 2.[14]

Plaintiff's suit alleges that Tract 1 and Tract 2 have been contaminated by the oil and gas exploration and production activities of Chevron and its predecessors.[15] Plaintiff's suit seeks various damages, including, but not limited to, the costs of remediation pursuant to La. R.S. 30:29.[16]

Chevron's instant motion seeks dismissal of all claims by Plaintiff against it on the basis that the successive purchaser doctrine bars Plaintiff's purported right of action in this case, making summary judgment in Chevron's favor correct as a matter of law.

A.   **Applicable Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We consider all evidence 'in the light most favorable to the party resisting the motion.'" Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 quoting Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."

---

[13] Doc. 138-4.
[14] Doc. 138-5.
[15] Doc. 1-2.
[16] Id. at ¶ 48.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

II.  ANALYSIS

Chevron's motion asserts entitlement to judgment as a matter of law based on application of the subsequent purchaser doctrine. The subsequent purchaser doctrine is a jurisprudential rule which provides that

> an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

Eagle Pipe & Supply v. Amerada Hess Corp., 79 So.3d 246, 257 (La. 2011). As explained by the Louisiana Third Circuit Court of Appeal in Lejeune Bros., Inc. v. Goodrich Petroleum Co., LLC, 981 So.2d 23 (La. App. 3 Cir. 2007), Louisiana jurisprudence overwhelmingly classifies a right of action on damages to land as a personal right, rather than a real right that runs with the land. La. Civ. C. Art. 1758; Lejeune, 981 So.2d at 31.

Chevron urges summary judgment dismissing all claims for damage to Tracts 1 and 2, asserting that the 2007 Cash Sale by which Plaintiff acquired such property did not contain express assignments of the rights to sue for pre-acquisition damage. Chevron points out, additionally, that Plaintiff did not acquire an ownership interest in Tract 2 until approximately 45 years after Chevron's predecessor's wells were plugged and abandoned. Chevron also reiterates that neither it, nor its predecessors engaged in production on Tract 1. Accordingly, argues Chevron, Plaintiff cannot show a right of action under these facts. We agree.

As described in our recitation of the facts above, Plaintiff acquired ownership of Tracts 1 and 2 by an Act of Cash Sale, dated June 25, 2007. The Cash Sale provides, in part, that

> Gwen Roussel Evans…declares that she does by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver with all legal warranties and with full substitution and subrogation in and to all the rifhts and action of warranty which said vendor has or may have against all preceding owners and vendors…[17]

Courts applying Louisiana law in interpreting similar contractual language decline to impute any transfer of personal rights to such clauses. See, e.g. Broussard v. Dow Chemical Co., 550 Fed. Appx. 241, 243 (5th Cir. 2013) (finding that the language "…with full and general warranty of title, and with full subrogation to all the rights and actions in warranty against any and all former owners and vendors…" was insufficient to constitute an express transfer of personal rights of action); Boone v. Conoco Phillips Co., 139 So.3d 1047, 153 (La. App. 3 Cir. 2014) (rejecting the transfer of personal rights of action based upon the language, "transfer[s] and deliver[s] with full guarantee of title and free from all encumbrances and with subrogation to all of its rights and actions of warranty against previous owners").

As above, jurisprudence rejects language such as used in the 2007 Cash Sale as a basis for transfer of personal rights. Accordingly, we find that Chevron has proven its allegation that Plaintiff was not expressly assigned and therefore does not possess rights of action for pre-acquisition damage to Tracts 1 and 2.

### III. CONCLUSION

After review of the law and argument advanced by the parties, as well as the evidence submitted in this matter, the court finds that Chevron, as movant herein, amply demonstrates its

---

[17] Doc. 138-4 at p. 1.

entitlement to judgment as a matter of law. Specifically, the court finds that the June 25, 2007 Act of Cash Sale by which Plaintiff acquired ownership interest in the property at issue in this case does not expressly assign the personal rights to sue for pre-acquisition damage to property to Plaintiff. We reject Plaintiff's argument inviting the court to interpret Louisiana law contrary to the overwhelming majority of courts to consider this issue and, instead, agree with the movant that the subsequent purchaser doctrine applies in this matter. Accordingly, Plaintiff does not possess such rights of action and such claims by him must now be dismissed.

The court further notes that Plaintiff and Chevron filed a Stipulation whereby Chevron agreed to assume any liability that may be attributed to Four Star Oil and Gas Company ("Four Star"), named defendant in this suit in Plaintiff's Supplemental and Amending Petition, and Plaintiff agreed to dismiss Four Star with prejudice.[18] Our review of the record indicates that Plaintiff failed to dismiss Four Star as stipulated to in that filing and, as such, Four Star should now be dismissed from the suit with prejudice.

The court will issue a judgment in conformity with these findings.

**Alexandria, Louisiana**
**August 23, 2016**

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[18] Doc. 114.